PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:16CR155 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JAMES D. SULLIVAN, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF Nos. 76, 77] |

Pending before the Court is Defendant's Motion to Withdraw his Plea of Guilty, ECF No. 76, and defense counsel's Motion to Withdraw as Attorney, ECF No. 77.  The Government responded.  ECF No. 80.  During a hearing held on July 20, 2017, the Court heard from counsel and Defendant James D. Sullivan on both motions.  For the following reasons, the Court denies Defendant's Motion to Withdraw his Plea of Guilty, and grants counsel's Motion to Withdraw as Attorney.

## I.  Background

The Court set forth the background of this case in its Memorandum of Opinion and Order on Defendant's Motion to Suppress and Motion in Limine:

Defendant James D. Sullivan is a convicted sex offender who was granted judicial release on July 25, 2014, after serving approximately thirty (30) years in prison for attempted rape and gross sexual imposition of four children.  ECF No. 27 at PageID #: 116.  Not quite two years after his release from prison, Defendant came under suspicion for voyeurism at a state park.  *Id.*  The Ohio State Highway Patrol ("OSHP") executed a series of search warrants and gained permission to obtain an

(1:16CR155)

> oral DNA sample from Defendant, to search his vehicle and apartment, and to seize and search electronic devices retrieved from his vehicle and apartment. *See* Aug. 26, 2015 Search Warrant, ECF No. 38-2; Aug. 27, 2015 Search Warrant, ECF No. 32-1 (38-5); Aug. 28, 2015 Search Warrant, ECF No. 32-2 (38-6); Aug. 31, 2015 Search Warrant, ECF No. 38-7; Sept. 3, 2015 Search Warrants, ECF Nos. 32-4 (38-8) and 38-9; and Sept. 8, 2015 Search Warrant ECF No. 32-3 (38-10).  The searches revealed evidence of, among other things: Defendant's DNA matching that in the semen found on the ceiling tile above a state park shower; child pornography on a laptop found in Defendant's apartment; and, a camera found in Defendant's car believed to have been possessed by the semen donor at the state park.

ECF No. 67 at PageID #: 594–95.

Defendant was indicted in a two-count Indictment on one count of attempted production of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and one count of knowingly possessing or accessing with intent to view child pornography in violation of 18 U.S.C. § 2251(a).  ECF No. 14.  After a hearing on his Motion to Suppress and Motion in Limine, in which the Court denied Defendant's requests to suppress items seized during the search of his residence, vehicle and computer and to exclude evidence related to his prior offenses (ECF Nos. 32, 55), Defendant entered into a written plea agreement.  *See* May 3, 2017, Minutes of Proceedings.

During the plea colloquy before a magistrate judge, Defendant made a multitude of sworn statements substantiating his plea of guilty.[1]  Defendant, a high school graduate with a few years of college, agreed that he had read and discussed the plea agreement with his attorney before he signed it; he confirmed the Government's recitation of the substance of the plea agreement; and

---

[1]  Defendant consented to Order of Referral to Magistrate Judge.  *See* ECF No. 65.

(1:16CR155)

assured the magistrate judge that there was nothing in the agreement that he did not understand. *Id.* at PageID #: 601, 602–03, 606, 609.  He also agreed that he was satisfied with his attorney's assistance and representation, *id.* at PageID #: 603, and confirmed the factual basis supporting the Indictment, *id.* at PageID #: 620–23.  He acknowledged that he had entered the plea agreement voluntarily.  ECF No. 68 at PageID #: 619, 628.  And finally, after pleading guilty to accessing child pornography with intent to view it,  Defendant admitted that he was pleaded guilty because he was indeed guilty of that crime.  *Id.* at PageID #: 628.  Neither counsel nor Defendant raised issues concerning Defendant's competency, and no party had reason to question Defendant's competency.  *Id.* at PageID #: 602, 628.  No objections were made to the report recommending the Court accept Defendant's plea of guilty.

## II. Motion to Withdraw Plea of Guilty

Defendant moves, pursuant to Federal Rule of Criminal Procedure 11, to withdraw his guilty plea.  ECF No. 76 at PageID #: 682.  "'[T]he withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court.'"  *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987), quoting *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir. 1978) ( per curiam ).  Rule 11(d) permits the withdrawal of pleas of guilty after the court has accepted the plea only if a "defendant can show a fair and just reason for requesting the withdrawal."  The rule places the burden on a moving defendant to show a "fair and just reason" why withdrawal of a guilty plea should be allowed.  *See, e.g., United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.), *cert. denied*, 519 U.S. 973 (1996).  "[T]he aim of the rule is to allow a hastily

(1:16CR155)

entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to

make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he

believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002,

1004 (6th Cir. 1991) (internal quotation omitted), *cert. denied*, 502 U.S. 1117 (1992); *see also*

*United States v. Hicks*, 234 F.3d 1270, *6 (6th Cir. 2000) (quoting *Brady v. United States*, 397

U.S. 746, 756 (1970)) ("[A] defendant is not entitled to withdraw his plea merely because he

discovers long after the plea has been accepted that his calculus misapprehended the quality of

the State's case.").  Only if the court rejects the agreement will the defendant have the

opportunity to withdraw his plea for any reason without the "fair and just reason" requirement.

*United States v. Hyde*, 520 U.S. 670, 676 (1997).

Whether a defendant has shown a fair and just reason is based on an evaluation of the

totality of the circumstances, including the following seven factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw
> it; (2) the presence (or absence) of a valid reason for the failure to move for
> withdrawal earlier in the proceedings; (3) whether the defendant has asserted or
> maintained his innocence; (4) the circumstances underlying the entry of the guilty
> plea; (5) the defendant's nature and background; (6) the degree to which the
> defendant has had prior experience with the criminal justice system; and (7)
> potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).  No one factor is controlling.

*Bazzi*, 94 F.3d at 1027.  In this matter, the factors weigh against granting Defendant's Motion.

4

(1:16CR155)

### A.  The Amount of Time Between the Guilty Plea and the Motion to Withdraw and Reason for Delay

The first two *Bashara* factors consider the length of time between a defendant's guilty plea and the motion to withdraw, and, if the time period is lengthy, the defendant's reason for the delay.  *Bashara*, 27 F.3d at 1181.  A court must determine whether a defendant waited a reasonable amount of time between entering his plea and making a motion to withdraw. Although there is no bright-line rule as to what constitutes a "reasonable" length of time, the Sixth Circuit has found a delay as short as thirty-six days to be unreasonable.  *United States v. Spencer*, 836 F.2d 236, 239–40 (6th Cir. 1987); *see also United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (finding an unjustified 75-day delay, on its own, was sufficient to support denial of defendant's motion to withdraw); *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (noting that the Sixth Circuit "has declined to allow plea withdrawal when intervening time periods were as brief as one month.").  A defendant can overcome a lengthy delay with a valid reason.  *Bashara*, 27 F.3d at 1181.

Defendant filed his Motion to Withdraw on July 13, 2017—seventy-one days after entering his guilty plea on May 3, 2017.  Compared to Sixth Circuit precedent, Defendant's seventy-one day delay is unreasonably long.  Giving Defendant the benefit of the doubt and calculating the date of filing from the date he allegedly penned his motion—July 5, 2017—does not improve his position.  At base, Defendant still moved to withdraw his plea of guilty sixty-three days after he entered it.

(1:16CR155)

At the July 20, 2017 hearing, Defendant argued that he attempted to direct his counsel to withdraw his plea on June 29, 2017, June 30, 2017, and July 3, 2017, but that his counsel did not respond to him.[2]  Defendant contends that, had counsel responded, he could have withdrawn his plea freely, and, therefore, he should be allowed to withdraw his plea now.  Although generally a district court lacks discretion to deny motions to withdraw guilty pleas that have been accepted, *United States v. Mendez-Santana*, 645 F.3d 822, 826 (6th Cir. 2011), this does not aid Defendant whose motion to withdraw was made after the Court had already approved his plea agreement and accepted his plea of guilty.

First, Defendant's allegation that he attempted to contact counsel numerous time seeking to withdraw his plea is belied by the record.  Defense counsel clarified that on June 28, 2017, Defendant expressed interest in withdrawing his plea, but decided to wait until counsel had spoken with Defendant's state counsel.  On June 29, 2017, Defendant left a message with counsel's research and writing specialist, asking to meet with her outside of counsel's presence.  Next, counsel heard from Defendant's sister on July 5, 2017 *via* an email, informing counsel of Defendant's letter to the Court.  The message did not, however, specify that Defendant wanted to withdraw his plea.  There is no record of Defendant attempting to contact counsel on June 30, 2017 or July 3, 2017.[3]  Defendant never left a message with defense counsel, although his

---

[2] Defendant's accounting is specious at best.  It is contradicted by his then counsel and called into question by his own writings to the Court.  *See, e.g.*,  Letter from Defendant dated July 16, 2017.

[3] In fact, Defendant wrote a letter to the Court dated July 16, 2017 and received

(continued...)

(1:16CR155)

interaction with the research and writing specialist indicates that he was capable of doing so.

Moreover, Defendant did not refute counsel's telling of the facts at the hearing.

Second, Defendant did not withdraw his plea prior to the Court's acceptance.  The Court

approved Defendant's plea agreement on July 3, 2017, two days before Defendant allegedly

penned his motion to withdraw.[4]  ECF No. 72.  In the months between accepting the plea

agreement and his motion to withdraw, Defendant did not object to the Magistrate Judge's

Report and Recommendation that his plea be accepted, nor did he attempt to contact the Court

himself prior to the Court's acceptance of his plea.  Defendant has shown that he quite capable

and comfortable contacting the Court, despite being represented by counsel.  In addition to his

motion to withdraw, Defendant had previously filed a *pro se* supplement to his counsel's Motion

to Suppress.  *See* ECF No. 45.  In sum, Defendant's argument that he sought to withdraw his plea

prior to the Court's acceptance is unpersuasive.  *See United States v. Moore*, No. 1:13CR345,

2014 WL 3842046 (N.D. Ohio Aug. 5, 2014) (finding defendant's argument that conflict

between defendant and counsel prevented defendant from moving to withdraw to be without

merit, when defendant had not communicated his intent to withdraw to counsel).

---

[3](...continued)
on July 25, 2016 criticizing his counsel for allegedly having contacted the Court about its
acceptance of his plea agreement prior to July 5, 2017.  In that writing, Defendant
concedes that, at that time–prior to July 5--he was "either trying to freely withdraw
[his]plea (*or was seriously contemplating such*)."  This is further proof that Defendant is
dissembling.  By his own words, he admits he had not decided whether to withdraw his
plea by the time the Court accepted it.

[4] The approval was docketed two days later.  *See* ECF No. 73 (Order Adopting
Report and Recommendation).

(1:16CR155)

The Court finds that Plaintiff waited an unreasonable and unjustified amount of time to withdraw his plea.  Accordingly, *Bashara*'s first two factors weigh against permitting the withdrawal of Defendant's guilty plea.

### B.  Absence of Claims of Innocence

The third *Bashara* factor questions whether the defendant has asserted or maintained his innocence.  *Bashara*, 27 F.3d at 1181.  Apart from "declar[ing] I am not guilty," in his motion, Defendant does not assert his innocence.  In fact, Defendant's arguments at the July 20, 2017 hearing do not imply innocence at all.  Instead, Defendant argued that there were various deficiencies in the plea agreement, indicating that he does not believe the Government can prove its case.  These arguments suggest that Defendant's withdrawal is motivated by buyer's remorse, rather than innocence.

Moreover, at his change of plea hearing, Defendant stated several times, while under oath, that he is guilty.  He swore that he was pleading guilty because he was indeed guilty of the offense charged in Count 1.  He also agreed with the factual basis presented by the Assistant United States Attorney, which laid out the basis for the elements of a 18 U.S.C. § 2252A(a)(5)(B) offense.  ECF No. 68 at PageID #: 623, 627–28.  This encourages a finding that the third *Bashara* factor weighs against withdrawal.  *United States v. Catchings*, 708 F.3d 710, 719–20 (6th Cir. 2013) (finding that *Bashara*'s third factor weighed against the defendant because he had pleaded guilty, and had not asserted that he was innocent).

(1:16CR155)

### C. Circumstances Underlying the Entry of the Guilty Plea

*Bashara*'s fourth factor considers the circumstances surrounding a defendant's decision to enter a guilty plea. *Bashara*, 27 F.3d at 1181. Defendant contends that his counsel did not fully inform him of the terms and consequences of the plea agreement. Defendant also argues that the terms of the plea agreement were not valid.

### i. Defendant's Counsel

Defendant makes myriad complaints about his counsel. None pass scrutiny. Defendant contends that he was not given sufficient opportunity to consider the plea agreement, and his counsel did not inform him of the collateral consequences of accepting the plea agreement. He alleges that his counsel never gave him the plea agreement, and only read the agreement aloud to him minutes before the hearing before the magistrate judge. When Defendant expressed his apprehension, his counsel allegedly told him that due to his past record, a jury would convict him, and that even the Court thought Defendant was guilty.[5] Defendant also contends that his counsel incorrectly informed him of two collateral consequences of his plea: (1) counsel allegedly told Defendant that he would only get sentenced to a few years at the state level, when, in reality, he is facing twenty years on his state court violation; (2) counsel allegedly promised

---

[5] Defendant argued that he felt pressured to accept the plea agreement, believing that he would be unable to get a fair trial before the Court. This is belied by the record. At his change of plea hearing, Defendant assured the magistrate judge that he knew he had a right to a trial by jury, that is a trial before twelve jurors from the community. The Court's explanation of its ruling at an evidentiary hearing, especially a suppression hearing urged by the defense, is expected and cannot be controverted into a legitimate concern that Defendant believed he would be unable to receive a fair trial.

(1:16CR155)

Defendant hat he would qualify for the Residential Drug Abuse Program ("RDAP").  Defendant

argues that, without this erroneous advice, he would not have accepted the plea agreement.

       Defense counsel clarified that, in the days before the Suppression Hearing, counsel

informed Defendant that the Government was preparing a plea agreement, and would be likely to

agree to a range of 151 to 188 months.  Defendant was not interested in considering a plea

agreement until after the suppression hearing.  Defense counsel gave a copy of the completed

plea agreement to the United States Marshals to deliver to Defendant the day the plea agreement

was complete.  Counsel vehemently refutes Defendant's statement that he told Defendant he had

to plead guilty, and states that he only informed Defendant of the May 2, 2017 plea cutoff.  The

Government confirmed that the parties had discussed the substance of the plea prior to the

Suppression Hearing, and that it was not until after the Suppression Hearing that Defendant

indicated that he was interested in a plea agreement.   Furthermore, defense counsel denies

making any promises regarding Defendant's state court sentence or RDAP eligibility.   Instead,

counsel told Defendant that he would need to discuss the implications for his state sentence with

his state attorney.  He also told him that Defendant might be eligible for RDAP, and they could

ask the Court to recommend it, but the Court cannot order it.

(1:16CR155)

The Court finds Defendant's argument to be wholly without merit.[6]  Defendant's counsel

has zealously and competently represented Defendant throughout the course of this contested

litigation.  While the Court was not involved in the plea negotiations, even Government's

counsel agrees, to the extent he was able, with defense counsel's version of events.  Although

counsel delayed presenting the plea agreement to Defendant, the delay was reasonable given

Defendant's refusal to consider a plea prior to the Suppression Hearing.  Counsel also acted

reasonably in his recommendations to Defendant regarding the effect on his state sentence and

---

[6]  Although a defendant need not prove his ineffective assistance of counsel claim
to justify withdrawing his plea, the framework set forth in *Strickland v. Washington*, 466
U.S. 668, 687 (1984) is informative in this instance.  Generally, to establish an ineffective
assistance of counsel claim, a defendant must first demonstrate that counsel's
performance was deficient.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "This
requires showing that counsel made errors so serious that counsel was not functioning as
the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*.   Next, the
defendant must show that counsel's deficient performance prejudiced the defense.  *Id*.
"This requires showing that counsel's errors were so serious as to deprive [the petitioner]
of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it
cannot be said that the conviction or death sentence resulted from a breakdown in the
adversary process that renders the result unreliable."  *Id*.
Counsel's performance is deficient when the representation falls below an
"objective standard of reasonableness."  *Id*. at 688.  A defendant must overcome the
strong presumption that counsel's conduct fell "within the wide range of reasonable
professional assistance," and that "the challenged action 'might be considered ``sound
trial strategy.'"  *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Not
all errors by counsel are constitutional violations.  "An error by counsel, even if
professionally unreasonable, does not warrant setting aside the judgment of a criminal
proceeding if the error had no effect on the judgment."  *Id*. at 691.  To satisfy the
prejudice requirement of *Strickland*, a petitioner must show "that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different.  A reasonable probability is a probability sufficient to
undermine confidence in the outcome."  *Id*. at 694.  The failure to satisfy either
requirement is fatal to an ineffective assistance of counsel claim.  *Id*. at 697.

(1:16CR155)

the possibility of RDAP. Although Defendant contends that, if advised differently, he would not have accepted the plea, there was nothing about the proceeding so fundamentally unfair or unreliable as to render it defective. Similarly, if Defendant felt rushed in deciding to agree to the plea, any such pressure was due to his own delay in considering the agreement.

Furthermore, Defendant's arguments are in stark contradiction to his sworn statements that his guilty plea was voluntary and not coerced, that he understood the terms and had gone over them with counsel, and that he was satisfied with his defense counsel. ECF No. 19 at PageID #: 99, 108–09, 118. Defendant does not attempt to explain why he lied under oath or why he should be believed now.

Accordingly, the Court finds that Defendant received competent counsel, that he was not prejudiced by counsel's representation, and that Defendant's arguments are unpersuasive.

### ii. Validity of the Plea Agreement

Defendant makes various arguments that the terms of the plea agreement were not valid. For example, he argues that the plea agreement lacks a factual basis, and does not say that he committed a crime. In support, Defendant attempts to parse the language of 18 U.S.C. § 2252A(a)(5)(B), arguing that the statute prohibits accessing "material," but the plea agreement states that Defendant accessed "numerous digital files," rather than specifying the Defendant

(1:16CR155)

accessed a flash drive or the Internet.[7]  These conclusory, baseless arguments, hoping to "get off

on a technicality," are not well taken, and provide no justification for permitting withdrawal.

### iii.  Summary

For the foregoing reasons, the Court find that the fourth *Bashara* factor weighs against

withdrawal.

### D.  Defendant's Nature and Background and Defendant's Prior Experience with the Criminal Justice System

The fifth *Bashara* factor instructs courts to examine a defendant's background to

determine whether the defendant lacks competence to understand and enter into a plea

agreement.  *Bashara*, 27 F.3d at 1181.  A court should consider a defendant's level of education

and history of mental illness.  *United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012).

Relatedly, the sixth *Bashara* factor considers whether a defendant has prior experience with the

criminal justice system, making it more likely that he would understand the consequences of

entering into a plea agreement.  *Id*.

---

[7]  Defendant's citation to *United States v. Brune*, 767 F.3d 1009, 1022 (10th Cir. 2014) in support of this point does nothing to aid his argument.  In this non-binding case, the Tenth Circuit considered whether the statute's use of "any other materials" was unconstitutionally overbroad.  *Brune*, 767 F.3d at 1022–25.  The court rejected the defendant's argument that the statute could be read so broadly that it would prohibit any use of the Internet.  *Id*.  The Tenth Circuit determined that "any other material" must be "construed to embrace only objects similar in nature to those objects enumerated" in the statute, that being "book, magazine, periodical, film, videotape, [and] computer disk."  *Id. at 1023*.  In fact, the Tenth Circuit specifically noted that "downloadable digitized images of child pornography"—essentially the same as "digital files"— "are the specific type of media that the statute targets."  *Id*.

(1:16CR155)

In this case, Defendant attained an Associate's Degree in Business from Ohio University and writes and speaks English.  ECF No. 71 at PageID #: 654.  There is no indication that he was not able to understand the plea agreement.  Moreover, Defendant has extensive experience with the criminal justice system, having spent twenty-two of the last forty years in prison.  *Id.* at PageID #: 645–54.  Defendant has ten separate convictions in four different courts, and has four parole revocations and one probation violation.  *Id.*  Defendant also has three other arrests that did not result in convictions.  *Id.*  In short, Defendant is well versed in the criminal justice system and would have been able to understand the consequences of a plea agreement.  *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007) (finding the sixth factor weighed against withdrawal for defendant with multiple felony convictions and who filed *pro se* motions).  For these reasons, the Court finds that the fifth and sixth *Bashara* factors weigh against allowing Defendant to withdraw his plea.

### E.  Prejudice to the Government

The seventh *Bashara* factor considers potential prejudice to the Government if the motion to withdraw were granted.  The Government would be significantly prejudiced if Defendant were permitted to withdraw his plea.  As the Government stated in its brief:

> [T]he [G]overnment was prepared to offer testimony from two individuals are part of its proposed FRE 414 evidence (referred to as LF and JR in [G]overnment's notice [ECF No. 51]).  LF and JF were children when Sullivan sexually abused them. While adults now, they still live with the trauma of the sexual abuse at Sullivan's hands.  They were prepared to testify to help insure that justice was served, but they were notified, after Sullivan's plea, that their testimony would be unnecessary.  To now pull the rug out from under them and tell them that they do have to testify would be cruel.  To conduct the trial without the benefit of such probative evidence would be unduly prejudicial to the [G]overnment.

14

(1:16CR155)

ECF No. 80 at PageID #: 695.

The Government's argument is well taken.  Permitting the withdrawal of Defendant's plea puts the Government in an unfortunate position, forcing it to choose between subjecting Defendant's victims to additional trauma, or not presenting a complete case.  Defendant has offered no reason to justify further traumatizing Defendant's victims.  Accordingly, the Court finds that *Bashara*'s seventh factor weigh against withdrawal.

### F. Summary

Finding that the *Bashara* factors weigh against withdrawal, the Court denies Defendant's Motion to Withdraw his Plea of Guilty.

### III.  Motion to Dismiss Counsel

Defense counsel moves to withdraw as counsel for Defendant.  ECF No. 77.  The parties elaborated on their conflict at the July 20, 2017 Hearing.  In particular, Defendant expressed dissatisfaction with counsel's work in a disrespectful manner at a meeting between counsel and Defendant on July 13, 2017.  The meeting became so contentious that counsel determined it to be in the best interest of counsel and Defendant to end the meeting and leave.

Criminal defense work can be difficult.  There is no reason to impose additional difficulty by requiring counsel to remain in a rancorous attorney-client relationship.  Having heard from Defendant and defense counsel, and having observed their interactions at the July 20, 2017 Hearing, the Court grants the Motion to Withdraw.  In a separate Order, the Court will appoint

15

(1:16CR155)

new counsel for Defendant.  Defendant is cautioned against continuing such disrespectful

interactions with his newly appointed counsel.


        IT IS SO ORDERED.


    July 28, 2017              /s/ Benita Y. Pearson
Date                          Benita Y. Pearson
                              United States District Judge

16